UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRUIST BANK,<br><br>                 Interpleader Plaintiff,<br><br>v.<br><br>PASJ PROPERTIES LLC; DMITRY POYRAKOV; LENDINGONE LLC; CHICAGO TITLE INSURANCE COMPANY as assignee of MOFIN LENDING CORPORATION; FOUNDERS TITLE AGENCY as agent of DOE COMPANY; OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY as subrogee and assignee of NEW SILVER LENDING LLC; OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY as assignee of EXPRESS CAPITAL HOLDINGS LLC; LIMA ONE CAPITAL, LLC; HILLIARDS PROPERTIES LLC; CONSTRUCTION EXPRESS LLC; THRIFTY CAR SALES a/k/a AUTO MIAMI GROUP LLC; PICO ASSETS LLC; HORBAX INDUSTRISES CORP.; ANASTASIIA IARMOLENKO; PICO HOMES LLC; VIDA DYNAMICS LLC; OPTIMA INDUSTRIES LLC; and SET THE STATE MANAGEMENT LLC ,<br><br>                 Interpleader Defendants. | Hon. Karen M. Williams<br><br>Civil Action No.<br>1:25-cv-00817 (KMW) (EAP)<br><br><br>(Document Electronically Filed)<br><br>**DEFENDANT CHICAGO TITLE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES, AND CROSSCLAIM** |

Defendant, Chicago Title Insurance Company ("Defendant" or "CTIC"), by and through its undersigned counsel, hereby submits this Verified Answer, Affirmative Defenses, and Cross-Claim, by way of response to the Interpleader Complaint (the "Complaint") of Truist Bank ("Truist" or "Plaintiff"), hereby says:

## PARTIES, JURISDICTION, AND VENUE

1.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2.

3.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

4.      CTIC admits it is a title insurer with an address at 601 Riverside Avenue, Jacksonville, Florida, 32204, that has an interest (vis-à-vis its relationship with, *inter alia*, MoFin) in a portion of the Fund.

5.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5.

6.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6.

7.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

8.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 9.

10.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10.

11.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11.

12.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.

13.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14.

15.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17.

18.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.

20.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.

21.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

## FACTS

22.     CTIC admits in 2024, PASJ and Poyarkov allegedly engaged in a fraudulent mortgage-stacking scheme concerning real property in Cherry Hill, New Jersey, and that PASJ and Poyarkov applied for and was granted a first-priority mortgage from MoFin.  CTIC lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 22.

a.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22(a).

b.     CTIC admits the allegations in Paragraph 22(b).

c.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22(c).

d.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22(d).

e.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22(e).

23.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.

a.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(a).

b.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(b).

c.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(c).

d.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(d).

e.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(e).

f.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(f).

g.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(g).

h.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(h).

i.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(i).

j.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(j).

k.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(k).

l.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(l).

m.      CTIC lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 24(m).

n.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(n).

o.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(o).

p.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(p).

q.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(q).

r.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(r).

s.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(s).

t.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(t).

u.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(u).

v.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(v).

w.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(w).

x.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(x).

25.     CTIC admits that a Court Order was entered by the New Jersey Superior Court on June 7, 2024, in the form attached to the Complaint as Exhibit A.  CTIC lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 25.

26.     CTIC admits that a separate Court Order was entered by the New Jersey Superior Court on June 11, 20204, in the form attached to the Complaint as Exhibit B.  CTIC lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 26.

27.     CTIC admits the allegations in Paragraph 27.

28.     CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28.

    a.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(a).

    b.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(b).

    c.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(c).

    d.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(d).

    e.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(e).

    f.      CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(f).

g.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(g).

h.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(h).

i.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(i).

j.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(j).

k.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(k).

l.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(l).

m.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(m).

n.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28(n).

o.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24(x).

29.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29.

30.    CTIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28.

## COUNT ONE - INTERPLEADER

31.    CTIC incorporates the preceding paragraphs as if fully set forth herein.

32.    CTIC admits it claims an interest in some portion of the Fund.

33.    CTIC lacks knowledge or information to form a belief as to the truth of the allegations in Paragraph 33 and/or this Paragraph contains legal conclusions to which no response is required.

34.    CTIC lacks knowledge or information to form a belief as to the truth of the allegations in Paragraph 34 and/or this Paragraph contains legal conclusions to which no response is required.

35.    CTIC lacks knowledge or information to form a belief as to the truth of the allegations in Paragraph 35 and/or this Paragraph contains legal conclusions to which no response is required.

## COUNT TWO – RECOVERY OF ATTORNEYS' FEES

36.    CTIC incorporates the preceding paragraphs as if fully set forth herein.

37.    CTIC lacks knowledge or information to form a belief as to the truth of the allegations in Paragraph 37 and/or this Paragraph contains legal conclusions to which no response is required.

38.    CTIC lacks knowledge or information to form a belief as to the truth of the allegations in Paragraph 38 and/or this Paragraph contains legal conclusions to which no response is required.

39.    CTIC lacks knowledge or information to form a belief as to the truth of the allegations in Paragraph 39 and/or this Paragraph contains legal conclusions to which no response is required.

40.    CTIC neither admits nor denies the allegations of the unnumbered "WHEREFORE" paragraph, as Plaintiff's entitlement to legal relief consists of legal conclusions to which no response is required.  To the extent a response is required, CTIC consents to the relief sought by Plaintiff, but reserves its rights to object to the reasonableness of any costs/fees sought by Plaintiff and reserves its rights to seek relief against Plaintiff at a later date should facts come to light indicating any wrongdoing on the part of Plaintiff in connection with the matters at issue in this action.

## AFFIRMATIVE DEFENSES

1. Any injuries, losses, or damages to Plaintiff were caused by acts of others over whom CTIC had no control, and for whose acts CTIC is not legally answerable.

2. CTIC incorporates herein by reference the affirmative defenses asserted or to be asserted by all other parties now or hereinafter appearing in the lawsuit.

3. CTIC reserves the right to amend and supplement its defenses based on facts learned through further investigation, discovery, and trial.

## CROSSCLAIM

CTIC, by and through its undersigned counsel, hereby brings this Crossclaim and states as follows:

## PARTIES

1. CTIC is a foreign corporation with offices located at 601 Riverside Avenue, Jacksonville, Florida 32204, and at all times relevant, was duly authorized to do business and issue title insurance policies in the State of New Jersey.

2. Upon information and belief, Defendant Dmitry Poyarkov ("Poyarkov") is an individual with a principal residence address at 35 Hilliards Rd., Gibbsboro, New Jersey 08026.

3. Upon information and belief, Defendant PASJ Properties LLC ("PASJ") is a limited liability company organized and existing under the laws of the State of New Jersy, with a principal place of business at 35 Hilliards Rd., Gibbsboro, New Jersey 08026.

4. Upon information and belief Defendant Pico Assets LLC ("Pico Assets") is a limited liability company organized and existing under the laws of the State of Florida, but registered and authorized to do business in the State of New Jersey, with a business address at 255 Old Egg Harbor

Rd., Suite #5, West Berlin, New Jersey 08091.

5.      Upon information and belief, Defendant Pico Homes LLC ("Pico Homes") is a limited liability company organized and existing under the laws of the State of New Jersey, with a principal place of business at 35 Hilliards Rd., Gibbsboro, New Jersey 08026.

6.      Upon information and belief, Defendant Construction Express LLC ("Construction Express") is a limited liability company organized and existing under the laws of the State of New Jersey, with a principal place of business at 255 Old Egg Harbor Rd., Suite #5, West Berlin, New Jersey 08091.

7.      Upon information and belief, Defendant Hilliards Properties LLC ("Hilliards") is a limited liability company organized and existing under the laws of the State of New Jersey, with a principal place of business at 35 Hilliards Rd., Gibbsboro, New Jersey 08026.

8.      Upon information and belief, Poyarkov is the sole member of PASJ, Pico Assets, Pico Homes, Construction Express, and Hilliards.

9.      Upon information and belief, Vida Dynamics LLC ("Vida") is a limited liability company organized and existing under the laws of the State of New Jersey, with a principal place of business at 255 Old Egg Harbor Rd., Suite #5, West Berlin, New Jersey 08091.

10.      Upon information and belief, Poyarkov is a principal of Vida.

11.      Upon information and belief, Optima Industries LLC ("Optima") is a limited liability company organized and existing under the laws of the State of New Jersey, with a principal place of business at 35 Hilliards Road, Gibbsboro, New Jersey 08025.

12.      Upon information and belief, Optima is an entity, owned, managed, or controlled by Poyarkov.

# FACTS

13.    This is an action arising out of Poyarkov's unlawful mortgage stacking scheme whereby Poyarkov, PASJ, Pico Assets, and their agents, representatives, assigns, and all those acting in concert with them or on their behalf, fraudulently obtained and absconded with funds from lenders insured by, *inter alia*, CTIC.

## A.  The Oak Court Transactions

14.    On or about February 7, 2024, Pico Assets, through Poyarkov, took title to property commonly known as 26 Oak Court, West Berlin, New Jersey (the "Oak Court Property"), via Sheriff's Deed recorded in the Camden County Clerk's Office on March 20, 2024, in Deed-OR Book 12535, Page 811.

15.    On or about April 3, 2024, Pico Assets, through Poyarkov, borrowed a principal amount of Two Hundred and Fifty Two Thousand Dollars ($252,000.00) from Direct Mortgage Loan Company (the "Direct Mortgage Loan").

16.    In connection with the Direct Mortgage Loan, Poyarkov, on behalf of Pico Assets as owner of the Oak Court Property, executed a note and purchase money mortgage encumbering the Oak Court Property, in favor of Direct Mortgage Loan Company ("DMLC"), in the amount of $252,000.00, recorded in the Camden County Clerk's Office on April 19, 2024, in Mortgage-OR Book 12564, Page 165 (the "Direct Mortgage").

17.    In connection with the Direct Mortgage Loan and Direct Mortgage, Poyarkov, on behalf of Pico Assets, executed an Affidavit of Title attesting that they had not allowed any interests to be created which affect Pico Assets' ownership or use of the property, that no other persons have legal rights in the property, and there were no liens, legal claims, or judgments on the property.

18.    In granting the Direct Mortgage Loan and Direct Mortgage, DMLC purchased a Loan

Policy of Title insurance (the "Direct Mortgage Loan Policy"), issued by American Title Abstract Corp. and underwritten by CTIC.

19.     The Direct Mortgage Loan Policy provided that CTIC would indemnify DMLC for any loss incurred with respect to its interest in the Oak Court Property, or the validity enforceability, and priority of the Direct Mortgage on the Oak Court Property.

20.     Under the Direct Mortgage Loan Policy CTIC was obligated to DMLC for the coverage of the full principal amount of the Direct Mortgage.

21.     On or about April 5, 2024, Pico Assets, through Poyarkov, borrowed a principal amount Two Hundred Fifty Two Thousand Eight Hundred Dollars ($252,800.00) from WCP Fund I, LLC (the "WCP Loan").

22.     In connection with the WCP Loan, Poyarkov, on behalf of Pico Assets as owner of the Property, executed a note and mortgage encumbering the Oak Court Property, in favor of WCP Fund I, LLC ("WCP"), in the amount of $252,800.00, recorded in the Camden County Clerk's Office on April 22, 2024, in Mortgage-OR Book 12565, Page 980 ("the WCP Mortgage").

23.     In connection with the WCP Loan and WCP Mortgage, Poyarkov executed a Guaranty.

24.     In connection with the WCP Loan and WCP Mortgage, Poyarkov, on behalf of Pico Assets, also executed a Term Sheet falsely agreeing to give WCP first lien priority on the Oak Court Property.

25.     In granting the WCP Loan and WCP Mortgage, WCP purchased a Loan Policy of Title insurance (the "WCP Loan Policy"), issued by West Jersey Title and underwritten by CTIC.

26.     The WCP Loan Policy provided that CTIC would indemnify WCP for any loss incurred with respect to its interest in the Oak Court Property, or the validity enforceability, and

priority of the WCP Mortgage on the Oak Court Property.

27.    Under the WCP Loan Policy CTIC was obligated to WCP for the coverage of the full principal amount of the WCP Mortgage.

28.    On or about May 28, 2024, Pico Assets requested an additional draw from DMLC. Prior to the disbursement, DMLC asked American Title Abstract Corp. to prepare a supplemental search prior to the disbursement. The supplemental title search revealed that Pico Assets had simultaneously granted several mortgages on the Oak Court Property, including the WCP Mortgage, without providing notice to DMLC.

29.    The mortgages executed by Pico Assets, through Poyarkov, encumbering the Oak Court Property were as follows:

a.    Commercial Mortgage, Security Agreement and Assignment of Leases and Rents granted to Velocity Capital in the original principal amount of $237,000.00, dated April 5, 2024, and recorded in the Camden County Clerk's Office April 15, 2024, in Book 12560, Page 616.

b.    The Direct Mortgage

c.    The WCP Mortgage

d.    Mortgage, Assignment of Rents, and Security Agreement granted to RCN Capital, LLC in the original principal amount of $268,000.00, dated April 5, 2024, and recorded in the Camden County Clerk's Office April 22, 2024, in Book 12565, Page 1063, with a Notice of Settlement as to said mortgage recorded in the Camden County Clerk's Office on April 3, 2024, in Book 12550, Page 133.

e.    Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing granted to Hard Money PA, LLC, in the original principal amount of $225,000.00,

dated April 9, 2024, and recorded in the Camden County Clerk's Office on May 3, 2024, in Book 12573, Page 827.

f.    Commercial Mortgage, Security Agreement, and Fixture Filing granted to MERS as Nominee for Lan Funder LLC Series 97098, in the original principal amount of $225,000.00, dated April 12, 2024, and recorded in the Camden County Clerk's Office on May 16, 2024, in Book 12582, Page 242.

30.    American Title Abstract Corp., notified CTIC and DMLC of its findings.

31.    Additionally, on May 30, 2024, DMLC submitted a claim to CTIC under the Direct Mortgage Loan Policy (the "Direct Mortgage Claim").

32.    On June 5, 2024, CTIC notified WCP of the loan stacking scheme initiated by Pico Assets (the "WCP Claim").

**B. The Chateau Drive Transactions**

33.    On or about April 19, 2024, PASJ, through Poyarkov, purchased real property commonly known as 1 Chateau Drive, Cherry Hill, New Jersey (the "Chateau Drive Property").  The deed vesting title in PASJ was recorded in the Camden County Clerk's Office on May 1, 2024, in Deed-OR Book 12571, Page 1.

34.    On May 22, 2024, PASJ, through Poyarkov, borrowed a principal amount of Four Hundred Sixty Five Thousand Dollars ($465,000.00) from MoFin Lending Corporation (the "MoFin Loan").

35.    In connection with the MoFin Loan, Poyarkov, on behalf of PASJ as owner of the Chateau Drive Property, executed a note mortgage encumbering the Chateau Drive Property, in favor of MoFin Lending Corporation ("MoFin"), in the amount of $465,000.00, recorded in the Camden County Clerk's Office on June 3, 2024, in Mortgage-OR Book 12592, Page 1904 ("the MoFin

Mortgage").

36.    In connection with the MoFin Loan and MoFin Mortgage, Poyarkov executed a Personal Guaranty.

37.    In connection with the MoFin Loan and MoFin Mortgage, Poyarkov, on behalf of PASJ, also executed a Term Sheet falsely agreeing to give MoFin first lien priority on the Property.

38.    In connection with the MoFin Loan and MoFin Mortgage, Poyarkov, on behalf of PASJ also executed an Affidavit of Title, falsely attesting that there were no other liens or encumbrances on the Chateau Drive Property.

39.    In granting the PASJ Loan and PASJ Mortgage, MoFin purchased a Loan Policy of Title insurance (the "MoFin Loan Policy"), issued by Title Agency of New Jersey, Inc., and underwritten by CTIC.

40.    The MoFin Loan Policy provided that CTIC would indemnify MoFin for any loss incurred with respect to its interest in the Chateau Drive Property, or the validity enforceability, and priority of the MoFin Mortgage on the Chateau Drive Property.

41.    Under the MoFin Loan Policy CTIC was obligated to MoFin for the coverage of the full principal amount of the MoFin Mortgage.

42.    Shortly thereafter, MoFin and Title Agency of New Jersey, Inc., became aware that PASJ and Poyarkov were taking simultaneous loans from multiple lenders in a loan stacking scheme (the "MoFin Claim").

43.    The mortgages executed by PASJ, through Poyarkov, encumbering the Chateau Drive Property were as follows:

      a.    Open-End Commercial Mortgage, Security Agreement and Fixture Filing granted to LendingOne LLC, in the original principal amount of $463,500.00, dated

May 17, 2024, and recorded in the Camden County Clerk's Office May 28, 2024, in Book 12588, Page 1767.

b.    Commercial Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing granted to Express Capital Holdings LLC, in the original principal amount of $459,000.00, dated May 21, 2024, and recorded in the Camden County Clerk's Office May 28, 2024, in Book 12588, Page 1767.

c.    The MoFin Mortgage

44.    Not voluntarily, and pursuant to the terms of the MoFin Loan Policy, CTIC retained counsel on behalf of MoFin to resolve the MoFin Claim.

45.    On or about June 4, 2024, MoFin initiated an action in the Superior Court of New Jersey, Passaic County, Law Division (the "State Court"), under Docket No. PAS-L-1670-24 (the "State Court Action"), seeking, *inter alia¸* an Order restraining any bank accounts, including but not limited to those with Plaintiff, held in the name of PASJ and Poyarkov.

46.    On or about June 6, 2024, the State Court entered an order, *inter alia*, enjoining and restraining PASJ and Poyarkov, their agents, representatives, assigns, and all those acting in concert with them or on their behalf from removing, transferring, assigning, selling, pledging, encumbering, conveying, or otherwise disposing of any property in any bank accounts in their names, including those with Plaintiff, and any property, including real property, that they own.

47.    Through documents provided by Plaintiff in the State Court Action, MoFin was able to trace the initial wire of the MoFin Loan proceeds, in the amount of $420,549.05 (the "MoFin Loan Proceeds"), to an account held by PASJ.

48.    On or about August 14, 2024, MoFin filed a motion in the State Court Action, seeking an order releasing the MoFin Loan Proceeds from the PASJ account.

49.     On or about August 30, 2024, the State Court entered an order requiring Plaintiff to return the MoFin Loan Proceeds to MoFin.

50.     Poyarkov's scheme, through his various LLCS and companies, including but not limited to Pico Assets and PASJ, was calculated in that they worked with different title agents (e.g., American Title Abstract Corp., West Jersey Title) and different underwriter/issuing title insurance companies (e.g., CTIC, Old Republic Title Insurance Company), on each loan so multiple loans would not show up on any one title company and/or agent's system.

51.     Poyarkov and his various LLCs and companies, including but not limited to Pico Assets and PASJ, took advantage of a delay in the recording process whereby it could take days or weeks between submission of a mortgage loan document and the recording of same.

52.     This delay works to the benefit of potential fraudsters such as Poyarkov, Pico Assets, PASJ, and their agents, representatives, assigns, and all those acting in concert with them or on their behalf, and to the detriment of mortgage companies, such as CTIC's insureds, and title insurance companies, such as CTIC.

53.     This scheme used by Poyarkov and his various LLCs and companies, including but not limited to Pico Assets and PASJ, in the Oak Court Transactions and the Chateau Drive Transactions is commonly referred to as a "loan stacking scheme" which consists of fraudsters closing loans with several lenders within a "gap" timeframe between closing and recording of mortgages.

### C.  CTIC's Damages

54.     As a direct and proximate result of the acts, false statements, and material misrepresentations by Pico Assets, through Poyarkov, CTIC provided the Direct Mortgage Loan Policy.

55.     Not voluntarily, and pursuant to the terms of the Direct Mortgage Loan Policy, as a direct and proximate act of the wrongful and false material statements by Pico Assets, through Poyarkov, CTIC paid the balance of the Direct Mortgage, in the amount of $233,698.68, to DMLC resolve the Direct Mortgage Claim (the "DMLC Loss Payment").

56.     As a result, of CTIC's payment in the amount of $233,698.68, a satisfaction of the Direct Mortgage was executed by DMLC on July 22, 2024, and recorded in the Camden County Clerk's Office.

57.     As a direct and proximate result of the acts, false statements, and material misrepresentations by Pico Assets, through Poyarkov, CTIC provided the WCP Loan Policy.

58.     Not voluntarily, and pursuant to the terms of the WCP Loan Policy, as a direct and proximate act of the wrongful and false material statements by Pico Assets, through Poyarkov, CTIC tendered the full principal amount of the WCP Mortgage, in the amount of $252,800.00, to WCP to resolve the WCP Claim (the "WCP Loss Payment").

59.     As a direct and proximate result of the acts, false statements, and material misrepresentations by PASJ, through Poyarkov, CTIC provided the MoFin Loan Policy.

60.     Not voluntarily, and pursuant to the terms of the MoFin Loan Policy, as a direct and proximate act of the wrongful and false material statements by PASJ, through Poyarkov, CTIC retained counsel on behalf of MoFin to resolve the MoFin Claim.

61.     Pursuant to the terms of the MoFin Loan Policy, and as a direct and proximate act of the wrongful and false material statements by PASJ, through Poyarkov, CTIC incurred legal fees and expenses in the amount of $19,572.35 (the "MoFin Expenses"), and tendered an additional $50,000.00 to MoFin (the "MoFin Loss Payment") to resolve the MoFin Claim.

62.     By assignment of mortgage, dated September 25, 2025, and recorded in the Camden

County Clerk's Office on November 14, 2024, MoFin assigned it's note and Mortgage to CTIC.

63.    As a result of the criminal and fraudulent conduct of Poyarkov through his various companies and LLCs, including but not limited to Pico Assets and PASJ, CTIC has suffered damages in the amount of 556,071.03 plus interest.

## COUNT ONE AGAINST POYARKOV, PICO ASSETS, AND PASJ
### (Conspiracy to Commit Fraud and Fraud)

64.    CTIC repeats and reiterates the allegations set forth in Cross Claim Paragraphs 1-63 as if set forth at length herein.

65.    Poyarkov, Pico Assets, and PASJ obtained money from the above referenced transactions through false pretenses, false representations, and actual fraud.

66.    Poyarkov and Pico Assets participated in a conspiracy to commit fraud upon DMLC and WCP concerning the Direct Mortgage Loan, the Direct Mortgage, the WCP Loan, the WCP Mortgage, and to cause CTIC to issue the Direct Mortgage Loan Policy and WCP Loan Policy insuring the mortgages as valid first liens against the Oak Court Property.  In fact, Poyarkov and Pico Assets had already encumbered the Oak Court Property at least once prior to obtaining the Direct Mortgage Loan, and at least twice before obtaining the WCP Loan.

67.    At the time Pico Assets obtained the Direct Mortgage Loan, Pico Assets, through Poyarkov, falsely represented that there were no other liens or encumbrances on the Oak Court Property, by executing, *inter alia*, the Affidavit of Title in connection with the Direct Mortgage Loan and Direct Mortgage.

68.    Pico Assets, through Poyarkov, made such false representations and concealed the fact that there were other liens and encumbrances on the Oak Court Property either knowingly, without belief in the truth, or in reckless or careless disregard of the truth.

69.     Upon information and belief, DMLC would not have granted the Direct Mortgage Loan had it known the true facts, that the Oak Court Property was already encumbered, and CTIC would not have issued the Direct Mortgage Loan Policy insuring the Direct Mortgage.

70.     DMLC and CTIC reasonably relied on the false statements of Pico Assets, through Poyarkov, that there were no other liens and encumbrances on the Oak Court Property to their detriment.

71.     Upon information and belief, the Direct Mortgage Loan, Direct Mortgage, and Direct Mortgage Loan Policy were all predicated on Pico Assets' and Poyarkov's material false statements that there were no other liens and encumbrances on the Oak Court Property.

72.     At the time Pico Assets obtained the WCP Loan, Pico Assets, through Poyarkov, falsely represented that there were no other liens or encumbrances on the Oak Court Property, by executing, *inter alia*, the Term Sheet in connection with the WCP Loan and WCP Mortgage

73.     Pico Assets, through Poyarkov, made such false representations and concealed the fact that there were other liens and encumbrances on the Oak Court Property either knowingly, without belief in the truth, or in reckless or careless disregard of the truth.

74.     Upon information and belief, WCP would not have granted the WCP Loan had it known the true facts, that the Oak Court Property was already encumbered, and CTIC would not have issued the WCP Loan Policy insuring the WCP Mortgage.

75.     WCP and CTIC reasonably relied on the false statements of Pico Assets, through Poyarkov, that there were no other liens and encumbrances on the Oak Court Property to their detriment.

76.     Upon information and belief, the WCP Loan, WCP Mortgage, and WCP Loan Policy were all predicated on Pico Assets' and Poyarkov's material false statements that there were no other

liens and encumbrances on the Oak Court Property.

77.    Poyarkov and PASJ participated in a conspiracy to commit fraud upon MoFin concerning the MoFin Loan and the MoFin Mortgage, and to cause CTIC to issue the MoFin Loan Policy insuring the MoFin Mortgage as valid first lien against the Chateau Drive Property.  In fact, Poyarkov and PASJ had already encumbered the Chateau Drive Property prior to obtaining the MoFin Loan.

78.    At the time PASJ obtained the MoFin Loan, PASJ, through Poyarkov, falsely represented that there were no other liens or encumbrances on the Chateau Drive Property, by executing, *inter alia*, the Affidavit of Title and the Term Sheet in connection with the MoFin Loan and MoFin Mortgage.  In fact, Poyarkov and PASJ had already encumbered the Chateau Drive Property prior to obtaining the MoFin Loan.

79.    Pico Assets, through Poyarkov, made such false representations and concealed the fact that there were other liens and encumbrances on the Chateau Drive Property either knowingly, without belief in the truth, or in reckless or careless disregard of the truth.

80.    MoFin would not have granted the MoFin Loan had it known the true facts, that the Chateau Drive Property was already encumbered, and CTIC would not have issued the MoFin Loan Policy insuring the MoFin Mortgage.

81.    MoFin and CTIC reasonably relied on the false statements of PASJ through Poyarkov that there were no other liens and encumbrances on the Chateau Drive Property to their detriment.

82.    The MoFin Loan, MoFin Mortgage, and MoFin Loan Policy were all predicated on PASJ's and Poyarkov's material false statements that there were no other liens and encumbrances on the Chateau Drive Property.

83.    As a result of the Poyarkov's, Pico Assets, and PASJ's concerted actions to commit

fraud and their ultimate fraud, CTIC in its own capacity, and as subrogee of DMLC and WCP, and as subrogee and assignee of MoFin, has been damaged, thus far, in the amount of $536.498.68, plus the minimum $19,572.35 of counsel fees and expenses.

84.    CTIC is exposed to additional losses due to the criminal and fraudulent conduct of Poyarkov, Pico Assets, PASJ and their agents, representatives, assigns, and all those acting in concert with them or on their behalf.

85.    CTIC was not knowledgeable of the frauds and had no inquiry notice of the frauds until the end of May 2024.

86.    The conduct of Poyarkov, Pico Assets, and PASJ  is outrageous and warrants the issuance of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Poyarkov, Pico Assets, and PASJ as follows:

(a)    Compensatory and consequential damages;

(b)    Punitive damages;

(c)    Attorneys' fees and other costs of suit; and

(d)    Such other relief as the Court may deem just and equitable.

### COUNT TWO AGAINST POYARKOV, PICO ASSETS, AND PASJ
**(Conspiracy to Commit Fraud in the Inducement and Fraud in the Inducement)**

87.    CTIC repeats and reiterates the allegations set forth in Cross Claim Paragraphs 1-63 as if set forth at length herein.

88.    Poyarkov, Pico Assets, and PASJ obtained money from the above referenced transactions through false pretenses, false representations, and actual fraud.

89.    Poyarkov and Pico Assets participated in a conspiracy to commit fraud in the inducement upon DMLC and WCP concerning the Direct Mortgage Loan, the Direct Mortgage, the

WCP Loan, the WCP Mortgage, and to cause CTIC to issue the Direct Mortgage Loan Policy and WCP Policy insuring the mortgages as valid first liens against the Oak Court Property. In fact, Poyarkov and Pico Assets had already encumbered the Oak Court Property at least once prior to obtaining the Direct Mortgage Loan, and at least twice before obtaining the WCP Loan.

90.     At the time Pico Assets obtained the Direct Mortgage Loan, Pico Assets, through Poyarkov, falsely represented that there were no other liens or encumbrances on the Oak Court Property, by executing, *inter alia*, the Affidavit of Title in connection with the Direct Mortgage Loan and Direct Mortgage.

91.     Pico Assets, through Poyarkov, made such false representations and concealed the fact that there were other liens and encumbrances on Oak Court Property either knowingly, without belief in the truth, or in reckless or careless disregard of the truth, to induce DMLC to loan money and issue the Direct Mortgage, and to induce CTIC to issue the Direct Mortgage Loan Policy.

92.     Upon information and belief, DMLC would not have granted the Direct Mortgage Loan had they known the true facts, and CTIC would not have issued the Direct Mortgage Loan Policy insuring the Direct Mortgage.

93.     DMLC and CTIC reasonably relied on the false statements of Pico Assets, through Poyarkov, that there were no other liens and encumbrances on the Oak Court Property to their detriment.

94.     Upon information and belief, the Direct Mortgage Loan, Direct Mortgage, and Direct Mortgage Loan Policy were all predicated on Pico Assets' and Poyarkov's false statements that there were no other liens and encumbrances on the Oak Court Property.

95.     At the time Pico Assets obtained the WCP Loan, Pico Assets, through Poyarkov, falsely represented that there were no other liens or encumbrances on the Oak Court Property, by

executing, *inter alia*, the Term Sheet in connection with the WCP Loan and WCP Mortgage.

96.    Pico Assets, through Poyarkov, made such false representations and concealed the fact that there were other liens and encumbrances on Oak Court Property either knowingly, without belief in the truth, or in reckless or careless disregard of the truth, to induce WCP to loan money and issue the WCP Mortgage, and to induce CTIC to issue the WCP Loan Policy.

97.    Upon information and belief, WCP would not have granted the WCP Loan had they known the true facts, and CTIC would not have issued the WCP Loan Policy insuring the WCP Mortgage.

98.    WCP and CTIC reasonably relied on the false statements of Pico Assets, through Poyarkov, that there were no other liens and encumbrances on the Oak Court Property to their detriment.

99.    Upon information and belief, the WCP Loan, WCP Mortgage, and WCP Loan Policy were all predicated on Pico Assets' and Poyarkov's false statements that there were no other liens and encumbrances on the Oak Court Property.

100.    Poyarkov and PASJ participated in a conspiracy to commit fraud in the inducement upon MoFin concerning the MoFin Loan and the MoFin Mortgage, and to cause CTIC to issue the MoFin Loan Policy insuring the MoFin Mortgage as valid first lien against the Chateau Drive Property.  In fact, Poyarkov and PASJ had already encumbered the Chateau Drive Property prior to obtaining the MoFin Loan.

101.    At the time PASJ obtained the MoFin Loan, PASJ, through Poyarkov, falsely represented that there were no other liens or encumbrances on the Chateau Drive Property, by executing, *inter alia*, the Affidavit of Title and the Term Sheet in connection with the MoFin Loan and MoFin Mortgage.

102. PASJ, through Poyarkov, made such false representations and concealed the fact that there were other liens and encumbrances on Chateau Drive Property either knowingly, without belief in the truth, or in reckless or careless disregard of the truth, to induce MoFin to loan money and issue the MoFin Mortgage, and to induce CTIC to issue the MoFin Loan Policy.

103. MoFin would not have granted the MoFin Loan had they known the true facts, and CTIC would not have issued the MoFin Loan Policy insuring the MoFin Mortgage.

104. MoFin and CTIC reasonably relied on the false statements of PASJ through Poyarkov that there were no other liens and encumbrances on the Chateau Drive Property to their deteriment.

105. The MoFin Loan, MoFin Mortgage, and MoFin Loan Policy were all predicated on PASJ's and Poyarkov's false statements that there were no other liens and encumbrances on the Chateau Drive Property.

106. As a result of the Poyarkov's, Pico Assets, and PASJ's concerted actions to commit fraud in the inducement and their ultimate fraud in the inducement, CTIC in its own capacity, and as subrogee of DMLC and WCP, and as subrogee and assignee of MoFin, has been damaged, thus far, in the amount of $536.498.68, plus the minimum $19,572.35 of counsel fees and expenses.

107. CTIC was not knowledgeable of the frauds and had no inquiry notice of the frauds until the end of May 2024.

108. CTIC is exposed to additional losses due to the criminal and fraudulent conduct of Poyarkov, Pico Assets, PASJ, and their agents, representatives, assigns, and all those acting in concert with them or on their behalf.

109. CTIC was not knowledgeable of the frauds and had no inquiry notice of the frauds until the end of May 2024.

110. The conduct of Poyarkov, Pico Assets, and PASJ is outrageous and warrants the

issuance of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Poyarkov, Pico Assets, and PASJ as follows:

(a)    Compensatory and consequential damages;

(b)    Punitive damages;

(c)    Attorneys' fees and other costs of suit; and

(d)    Such other relief as the Court may deem just and equitable.

### COUNT THREE AGAINST POYARKOV, PICO ASSETS, AND PASJ
### (Negligent Misrepresentation)

111.    CTIC repeats and reiterates the allegations set forth in Cross Claim Paragraphs 1-63 as if set forth at length herein.

112.    If Poyarkov and Pico Assets did not intentionally mislead DMLC and CTIC, then Poyarkov and Pico Assets failed to exercise reasonable care and/or negligently misrepresented that the Oak Court Property was not encumbered when Pico Assets, through Poyarkov, executed, *inter alia*, the Affidavit of Title.

113.    It was reasonably expected and intended that DMLC would rely on the misrepresentations that the Oak Court Property was not encumbered in granting the Direct Mortgage Loan, and that CTIC would rely on the misrepresentations in issuing the Direct Mortgage Loan Policy.

114.    If Poyarkov and Pico Assets did not intentionally mislead WCP and CTIC, then Poyarkov and Pico Assets failed to exercise reasonable care and/or negligently misrepresented that the Oak Court Property was not encumbered when Pico Assets, through Poyarkov, executed, *inter alia*, the Term Sheet.

115.    It was reasonably expected and intended that WCP would rely on the

misrepresentations that the Oak Court Property was not encumbered in granting the WCP Loan, and that CTIC would rely on the misrepresentations in issuing the WCP Loan Policy.

116.    If Poyarkov and PASJ did not intentionally mislead MoFin and CTIC, then Poyarkov and Pico Assets failed to exercise reasonable care and/or negligently misrepresented that the Chateau Drive Property was not encumbered when PASJ, through Poyarkov, executed, *inter alia*, the Affidavit of Title and the Term Sheet.

117.    It was reasonably expected and intended that MoFin would rely on the misrepresentations that the Chateau Drive Property was not encumbered in granting the MoFin Loan, and that CTIC would rely on the misrepresentations in issuing the MoFin Loan Policy.

118.    CTIC in its own capacity, and as subrogee of DMLC and WCP, and as subrogee and assignee of MoFin relied upon the negligent misrepresentations of Poyarkov, Pico Assets, and PASJ.

119.    CTIC in its own capacity, and as subrogee of DMLC and WCP, and as subrogee and assignee of MoFin, has been damaged, thus far, in the amount of $536.498.68, plus the minimum $19,572.35 of counsel fees and expenses.

120.    CTIC is exposed to additional losses due to the conduct of Poyarkov, Pico Assets, PASJ, and their agents, representatives, assigns, and all those acting in concert with them or on their behalf.

**WHEREFORE**, Plaintiff demands judgment against Poyarkov, Pico Assets, and PASJ as follows:

(a)    Compensatory and consequential damages;

(b)    Attorneys' fees and other costs of suit; and

(c)    Such other relief as the Court may deem just and equitable.

**COUNT FOUR AGAINST POYARKOV, PICO ASSETS, PASJ, PICO HOMES, CONSTRUCTION EXPRESS, HILLIARDS, VIDA, AND OPTIMA**
**(Unjust Enrichment)**

121.    CTIC repeats and reiterates the allegations set forth in Cross Claim Paragraphs 1-63 as if set forth at length herein.

122.    Poyarkov, through his companies and LLCs, including but not limited to Pico Assets and PASJ, was able to wrongfully obtain loan proceeds from DMLC in the amount of $252,000.00 and WCP in the amount of $252,800.00.

123.    Poyarkov and Pico Assets received and did not pay back the Direct Mortgage Loan secured by the Direct Mortgage or the WCP Loan secured by the WCP Mortgage.

124.    CTIC, pursuant to its obligations under the Direct Mortgage Loan Policy paid DMLC $233,698.68 for the amounts borrowed by Poyarkov and Pico Assets.

125.    CTIC, pursuant to its obligations under the WCP Loan Policy paid WCP $252,800.00 for the amounts borrowed by Poyarkov and Pico Assets.

126.    Poyarkov is the sole member, managing member, and/or principal of Pico Assets, PASJ, Pico Homes, Construction Express, Hilliards, Vida and Optima.

127.    Due to the nature of the Interpleader Complaint, CTIC does not know in which accounts held by Poyarkov and/or his companies and LLCs the funds obtained from the Direct Mortgage Loan and WCP Loan may have been ultimately disbursed and/or disseminated.

128.    Therefore, in light of the surrounding circumstances, Poyarkov, Pico Assets, and/or potentially, PASJ, Pico Homes, Construction Express, Hilliards, Vida, and Optima, were enriched by the amounts borrowed by Poyarkov and Pico Assets from the Direct Mortgage Loan and WCP Loan, and that enrichment is unjust in that CTIC paid DMLC and WCP the amounts due and owing by Poyarkov and Pico Assets under the Direct Mortgage Loan and WCP Loan.

129.    The retention of the proceeds from the Direct Mortgage Loan and WCP Loan by Poyarkov, Pico Assets, and/or potentially PASJ, Pico Homes, Construction Express, Hilliards, Vida, and Optima violate fundamental principles of justice, equity, and good conscience.

130.    By reason of the foregoing, CTIC has been damaged, thus far, in the amount of $536.498.68, plus the minimum $19,572.35 of counsel fees and expenses.

**WHEREFORE**, Plaintiff demands judgment against Poyarkov, Pico Assets, PASJ, Pico Homes, Construction Express, Hilliards, Vida and Optima, as follows:

(a)    Compensatory and consequential damages;

(b)    Attorneys' fees and other costs of suit; and

(c)    Such other relief as the Court may deem just and equitable.

## COUNT FIVE AGAINST POYARKOV, PICO ASSETS, PASJ, PICO HOMES, CONSTRUCTION EXPRESS, HILLIARDS, VIDA, and OPTIMA
### (Conversion)

131.    CTIC repeats and reiterates the allegations set forth in Cross Claim Paragraphs 1-61 as if set forth at length herein.

132.    Poyarkov, through his companies and LLCs, including but not limited to Pico Assets and PASJ, was able to wrongfully exercise unlawful dominion and control over the property of DMLC and WCP by taking possession of the funds from the Direct Mortgage Loan and the WCP Loan.

133.    This unlawful dominion and control frustrated DMLC, WCP, and CTIC's ability to recover the funds from Direct Mortgage Loan and the WCP Loan.

134.    CTIC is exposed to additional losses due to the conduct of Poyarkov, Pico Assets, PASJ, and their agents, representatives, assigns, and all those acting in concert with them or on their behalf.

135.    The conduct of Poyarkov, Pico Assets, and PASJ is outrageous and warrants the issuance of punitive damages.

136.    Due to the nature of the Interpleader Complaint, CTIC does not know in which accounts held by Poyarkov and/or his companies and LLCs the funds obtained from the Direct Mortgage Loan and WCP Loan may have been ultimately disbursed and/or disseminated.

137.    Therefore, as a result of the conduct of Poyarkov and Pico Assets, and in light of the surrounding circumstances, potentially, PASJ, Pico Homes, Construction Express, Hilliards, Vida, and Optima, CTIC in its own capacity, and as subrogee of DMLC and WCP, and as subrogee and assignee of MoFin, has been damaged, thus far, in the amount of $536.498.68, plus the minimum $19,572.35 of counsel fees and expenses.

**WHEREFORE**, Plaintiff demands judgment against Poyarkov, Pico Assets, PASJ, Pico Homes, Construction Express, Hilliards, Vida, and Optima as follows:

(a)    Compensatory and consequential damages;

(b)    Punitive Damages;

(c)    Attorneys' fees and other costs of suit; and

(d)    Such other relief as the Court may deem just and equitable.

**FIDELITY NATIONAL LAW GROUP**

Dated:  April 7, 2025                    By:  /s/ Conika Majumdar, Esq.
                                         CONIKA MAJUMDAR, ESQ.
                                         Fidelity National Law Group
                                         103 Eisenhower Parkway, Suite 213
                                         Roseland, NJ 07068
                                         conika.majumdar@fnf.com
                                         (973) 863-7171
                                         *Attorneys for Defendant, Chicago Title Insurance Company*

## <u>CERTIFICATION</u>

Pursuant to <u>Local Civil Rule 11.2</u>, the undersigned, upon information and belief, states:

I certify that to the best of my present knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding, except for the action in the Superior Court of New Jersey, Superior Court of New Jersey, Passaic County, Law Division, styled, <u>MoFin Lending Corporation v. PASJ Properties LLC</u>, et. al., Docket No. PAS-L-1670-24.  I am not aware of any other party or parties who should be joined in this action.

**FIDELITY NATIONAL LAW GROUP**

Dated:  April 7, 2025                    By:  /s/ Conika Majumdar, Esq.
                                                CONIKA MAJUMDAR, ESQ.
                                                Fidelity National Law Group
                                                103 Eisenhower Parkway, Suite 213
                                                Roseland, NJ 07068
                                                conika.majumdar@fnf.com
                                                (973) 863-7171
                                                *Attorneys for Defendant, Chicago Title*
                                                *Insurance Company*

## VERIFICATION

STATE OF NEBRASKA       )
                                 ) ss.:
COUNTY OF DOUGLAS     )

Jonathan Gass, being duly sworn, deposes and says:

I am Assistant Vice President for Chicago Title Insurance Company, Defendant, in the instant action. I have read the foregoing Answer to Plaintiff's Complaint, Affirmative Defenses, and Cross Claims and know the contents therein. The same is true based upon a review of the files maintained in the ordinary course of business, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

By: _____
Name:  Jonathan Gass
Title: AVP

Sworn to before me on this
7th day of April 2025

_____
Notary Public

GENERAL NOTARY - State of Nebraska
CASSIE BREELING
My Comm. Exp. December 16, 2026